Dana DeJardins v. Donald Willard et al. Mr. President, may I just have a minute for a rebuttal? Yes, you may. I represent Dana DeJardins, who is a 22-year resident of Raymond, Maine. He was a long-term selectman for the town, and he had an excellent reputation. And he had no criminal record, he had no drinking problem, he never drove while intoxicated. But on October of 2012... Counsel, you're in an appellate court. We know the background story. Would you get to the appellate issues, please? I certainly would. Thank you. I understand. It's just a little introduction. I wanted to get to the legal issues, which are basically, in this case, under the anti-SLAPP statute. Maine's anti-SLAPP statute is the central matter in the case. And as I indicated... Can we go back, please? There is a rather obvious question about why what's left of this case is in federal court. You started this case in state court. And then because you'd pled some Federal Civil Rights Act claims under the Fourth and Fourteenth Amendment, it got removed to the federal court. The federal court then found that there was no real basis for the federal claims, as the complaint did not set forth a valid Fourth Amendment or Fourteenth Amendment claim. It then sort of automatically segued into resolving some state court claims, state law claims, of defamation and false light invasion of privacy, and found that there was something to those claims unless they were barred by the anti-SLAPP Act, and then gets into an issue which the Maine Supreme Court has not yet resolved about a potential conflict between the anti-SLAPP Act and the Maine Constitution. And the purpose of this appeal, apparently, is to get the federal court to decide that question for the Maine Supreme Court as to what the state constitution means. And there is a sort of visceral response on the part of federal judges that that isn't our job. So why should we be involved in resolution of a very difficult question arising under the Maine Constitution? I would concur with you, and I wish that I had never included a federal count in the complaint. As you know, I brought it in state court, and then it was removed. I do think that the essence of this case is a defamation case, and the essence of its resolution will depend on a very complex set of decisions, including one that just came out in November regarding the anti-SLAPP statute. I do think that's a Maine matter. I was almost going to suggest that some of these questions might even be referred to the Maine Supreme Court for decision, but if there's an appropriate way so that there's not a final judgment on the state law accounts and that that could be heard in state court at this point, that is something that we would be open to, and we would understand why the federal court didn't want to be involved. Let me complicate the matter a bit. We certainly have the power to order a remand to the state court, and I can understand the logic of the chief judge's position when it comes to the plaintiff Reynolds, but why on earth should we do that with respect to the plaintiff Willard? That case was decided in the district court without consideration of any of these questions of conditional privilege or the anti-SLAPP statute, but simply on the basis that no cognizable claim had been stated. Is there a cause of action here against Willard pleaded, and if so, what is it? I think that there are claims pleaded, basically the same claims that were pleaded against Mr. Reynolds. Except you've pleaded against Reynolds, you've got some emails that indicate that he has made statements which are arguably defamatory. There's nothing in the complaint that indicates any particular statements that Willard has made. You have a lot of suspicion. You know, you allege that he may have been the source of the sheriff's actions, right? That he may have agreed with Reynolds' position, but you've got no specific allegations and the standard in a federal complaint is plausibility. There's no plausible basis for a finding that Willard engaged in tortious conduct. There is an allegation that he basically stated that he was putting employees of the town of Raymond on notice to keep their eye out for Mr. Disjardin being intoxicated at meetings, and that he was doing that at the same time that Mr. Reynolds was making these false statements to the police to get Mr. Disjardin arrested or to humiliate him. But the Reynolds statements were purely responsive. He initiated nothing. He had been told just what you say Reynolds was telling others. And the furthest that I can see that you've alleged or that the emails indicate that he went is to say, okay, I get the message. I'll tell the people to keep their eyes open. Surely that's not actionable. Well, of course, as you know, we're at the pleading stage. I haven't done any discovery, but I would suggest that he was in a joint activity with Mr. Reynolds. I don't see the basis for you on making that claim. He was a man who was told something, and he said, I will tell my people to keep their eyes open. I don't see that that amounts to a joint action in the sense of joint by agreement with Reynolds. Well, in light of the fact that they both knew Mr. Disjardin very well, this is my argument, is they both knew him very well. They knew that it was false. The normal reaction would have been, what are you talking about? We know he's not a drunk. He never appears here. And so the suspect nature of them is the fact that they're both acting together jointly with unusual statements being made against a colleague of theirs, basically. And therefore, that's the basis of my suggestion that there's a malicious motive here, that they were both trying to embarrass and humiliate and get him arrested. Is there some reason you need two defendants in this case? No, there isn't. Again, similar to the point about the federal count, it perhaps should have been a more streamlined case. Because the principal wrongdoer obviously is Mr. Reynolds, and the principal count is defamation. It would improve your chances of getting a remand to the state court if Willard were not a defendant. And I understand that. So are you seriously pressing your appeal of the judgment in favor of Willard? It makes it less complicated for us. Let me give you a bit of advice. It makes it far easier for us if Willard is no longer in the case to accomplish the end result you seem to want. All right. Well, in that event, we are not pressing the appeal seriously as to Mr. Willard. Okay. Thank you. Thank you. May it please the Court, Daniel J. Murphy for Appellees, Donald Willard and Michael Reynolds. I believe it's now just Mr. Reynolds. Yes, Your Honor. Just wanted to have one clarification. My brother mentioned that the Cumberland County Sheriff's Departments are employees of the Town of Raymond. They're not employed by the Town of Raymond. They patrol in Cumberland County. The Town of Raymond is part of Cumberland County. I wanted to make that clarification. Your Honor, earlier Chief Judge Lynch mentioned some concerns about the constitutionality with respect to the main constitution and the federal court trying to construe the main constitution. I would suggest that under Nader 2, the shift in burdens with respect to the anti-SLAPP statute has addressed that concern, that there are no insurmountable burdens to pressing defamation claims in violation of the main constitution. Let me, you seem to, we seem to be talking across purposes. As to Mr. Reynolds, this case started in state court. You removed it to federal court. The federal claims no longer exist. There is no basis for federal jurisdiction except for a decision to have exercise pendant jurisdiction. In the end, doesn't it make more sense to have the main Supreme Court tell the world what it means on Nader 1, Nader 2, and Schilling, was that the other case? And isn't it even in the interest of the municipalities to get a clear decision from the main Supreme Court? Anything we say is just what we say. It has no really binding effect on Maine. Your Honor, I think Nader 2 was aimed squarely at the concerns that you've mentioned. And because of the shift in burdens, there really isn't a concern about whether there's a hurdle for litigants to bring defamation claims that may be knocked out under the anti-SLAPP statute. I think Nader 2 addressed those concerns. So you think the law is absolutely clear because of Nader 2? Well, I think that there's no insurmountable burden for litigants to bring defamation claims. And if there's an anti-SLAPP motion, their burden is to make their case. It's similar to other procedural aspects. But I think that looking at it in terms of insurmountable burden is probably the wrong approach. Let me try to put it in this perspective. This is a removed case from state court. It's removed on the basis of a Section 1983 count, which created a federal question. That count is resolved favorably to your clients, assuming that that resolution is correct. That leaves the state counts against Reynolds. Those counts, the district court at that point, and this court by extension, has discretion as to whether to exercise supplemental jurisdiction. There's no more original jurisdiction once the federal count is gone. The usual practice is that on a motion to dismiss early in the case, before a lot of time has been invested, that that supplemental jurisdiction won't be exercised. That the remaining purely state claims will be sent back to the state court. And what I'm struggling with is the notion of what earthly reason there is for not following that usual and prudential practice in this case, and letting the main state courts sort out whatever legal problems are involved in terms of how the anti-SLAPP statute applies to defamation and false light claims under main law. Well, Your Honor, obviously I think the court should exercise this discretion to keep the case. For judicial economy, expense, it's fully capable of making these decisions. But it also has the avenue of dismissing based on 12b-6. We have developed that in our brief respect to a lack of plausibility of these claims. And this court can dismiss under no review based on 12b-6. Without getting into the anti-SLAPP statute. Yes, Your Honor. This is your conditional privilege argument. No, Your Honor. There are pleading defects in the complaint, a number of them, that were acknowledged by the court in footnote 7. There was a, in the opinion itself, it says it is possible to infer that Mr. Reynolds had a discussion in October with respect to whether Mr. Desjardins was drunk driving. Didn't say plausible, possible. And then in the footnote 7, developed fully that this was stitched together, this inference was stitched together with very weak allegations. Right. And in fact, those underlying allegations cannot be stitched together. Okay. So it is possible to dismiss under 12b-6. Okay. Your Honor, if you'd like me to address other aspects of the case, I'm happy to. No, thank you. Thank you, Your Honor. Just briefly, in regard to 12b-6, I think I've addressed the fact that the only real claim they have is a conditional privilege argument, and it's a motion to dismiss. Well, he does have his footnote 7 argument, that the district court really reached out to make a string of inferences that become less and less probable, plausible. I don't think this is inference. This defamation is in writing. It says that he's drunk, that he repeatedly drives the roads, and we've submitted affidavits that that's false. Also, we allege that's absolutely false and that there's no merit to it whatsoever. So I suggest that that is not something that could be resolved on a 12b-6 motion. And in regard to this anti-SLAPP matter, the Mattawaska case raises very serious defects in the arguments that were asserted and the arguments that were adopted by the trial court. Okay. Thank you both.